## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT D. FORD,** | : | |
| **Plaintiff** | : | **No. 1:17-cv-00908** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **CITY OF HARRISBURG, et al.,** | : | **(Magistrate Judge Carlson)** |
| **Defendants** | : | |
| | : | |

### MEMORANDUM

Before the Court in the above-captioned action is a Report and Recommendation of

Magistrate Judge Carlson (Doc. No. 41), recommending that the Court grant in part and deny in

part a motion to dismiss Plaintiff Robert D. Ford ("Plaintiff")'s amended complaint (Doc. No.

28), filed by Defendants City of Harrisburg, Officer John O'Conner ("Defendant"), and Captain

Derik Moody ("Captain Moody") (collectively, "Defendants").  Upon consideration of the

briefing filed in connection with the motion to dismiss, Magistrate Judge Carlson's Report and

Recommendation, Defendants' objections to the Report and Recommendation, the briefing

related to those objections, and the applicable law, for the reasons provided herein, the Court

will adopt the Report and Recommendation in part and will grant Defendants' motion to dismiss

Plaintiff's federal claims.

### I.      BACKGROUND

On May 23, 2017, Plaintiff filed a pro se complaint against Defendants alleging

constitutional violations and state law claims arising out of an incident that occurred during

Memorial Day festivities in Harrisburg in May of 2015, during which Plaintiff, a 75 year old

veteran of the Marine Corps who was wearing his uniform while attending the festivities, alleges

that he was harassed, berated, and accused of "stolen valor" by Defendant O'Conner, an officer

with the Harrisburg Police Department. (Doc. No. 1.) Defendants filed a motion to dismiss

Plaintiff's complaint (Doc. No. 13), which Magistrate Judge Carlson recommended that this

Court grant by way of a Report and Recommendation dated November 22, 2017 (Doc. No. 21).

In that Report and Recommendation, Magistrate Judge Carlson recommended dismissal of

Plaintiff's complaint without prejudice to his ability to file an amended complaint that corrected

the pleading deficiencies identified in Magistrate Judge Carlson's Report and Recommendation.

(Id.) Specifically, in recommending dismissal of Plaintiff's First Amendment retaliation claim,

Magistrate Judge Carlson found that the actions attributed to Officer O'Conner fell within

Officer O'Conner's own First Amendment speech rights, and further, relied on precedent

holding that a government official's investigation, or threat to initiate an investigation, is not a

sufficiently adverse action for the purpose of a First Amendment retaliation claim unless the

investigation results in some formal action taken against the Plaintiff. (Doc. No. 21 at 17-18.)

The Court adopted the Report and Recommendation by Order dated December 12, 2017. (Doc.

No. 22.)

Subsequently, on March 29, 2018, Plaintiff filed a counseled amended complaint against

Defendants (Doc. No. 26), asserting six claims for relief, including: two claims against

Defendant O'Conner pursuant to 42 U.S.C. § 1983 for First Amendment retaliation and

defamation of character (counts 1 and 2); claims against Defendants Moody and City of

Harrisburg pursuant to 42 U.S.C. § 1983 for failure to train (counts 4 and 5); and state law

claims against Defendant O'Conner for intentional infliction of emotional distress and assault

(counts 3 and 7).[1]  Defendants then filed the pending motion to dismiss Plaintiff's amended

complaint.  (Doc. No. 28.)  In their motion to dismiss, Defendants argue that: (1) Plaintiff's

amended complaint does not adequately plead First Amendment retaliation and defamation of

character claims against Defendant O'Conner; (2) Defendant O'Conner is entitled to qualified

immunity on any such claims; (3) Plaintiff's amended complaint fails to adequately plead failure

to train claims against Defendants Moody and City of Harrisburg; and (4) Plaintiff's state law

claims against Defendant O'Conner also fail to set forth plausible claims for relief.  (Doc. No.

32.)

## II.    LEGAL STANDARD

The Magistrate Act, 28 U.S.C. § 636 et seq., and Rule 72(b) of the Federal Rules of Civil

Procedure provide that any party may file written objections to a magistrate's proposed findings

and recommendations.  The written objections must "specifically identify the portions of the

proposed findings, recommendations or report to which objection is made and the basis for such

objections."  See M.D. Pa. L.R. 72.3.  When a party objects to a report and recommendation of a

magistrate judge, this Court must "make a de novo determination of those portions of the report

or specified proposed findings or recommendations to which objection is made."  See 28 U.S.C.

§ 636(b); M.D. Pa. L.R. 72.3.  The Court may "accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  See id.

## III.    DISCUSSION

In his Report and Recommendation on the pending motion to dismiss, Magistrate Judge

---

[1] Count 6 of Plaintiff's amended complaint asserts an assault claim against a John Doe
defendant who allegedly participated in the harassment of Plaintiff.

Carlson recommends: (1) granting Defendants' motion to dismiss as to Plaintiff's failure to train claims asserted against Defendants Moody and City of Harrisburg (counts 4 and 5); (2) granting Defendants' motion to dismiss as to Plaintiff's state law claims (counts 3 and 7), with the exception of Plaintiff's state law claim against Defendant John Doe (count 6); and (3) denying Defendants' motion to dismiss as to Plaintiff's Section 1983 claims against Defendant O'Conner (counts 1 and 2). (Doc. No. 41.) The sole objection to Magistrate Judge Carlson's Report and Recommendation was raised by Defendants and challenges his recommendation that Defendants' motion to dismiss Plaintiff's Section 1983 claims against Defendant O'Conner be denied.[2] Accordingly, the Court limits its discussion to those claims.[3]

A.    **Plaintiff's Section 1983 Claims**

In recommending denial of Defendants' motion to dismiss Plaintiff's Section 1983 First Amendment retaliation and defamation of character claims, Magistrate Judge Carlson finds that Plaintiff's amended complaint adequately alleges the required elements of First Amendment retaliation and defamation of character claims. (Doc. No. 41 at 17-22.) As to Plaintiff's First Amendment retaliation claim, the Report and Recommendation finds that Plaintiff "easily

---

[2] Plaintiff initially failed to file a timely response to Defendants' objections; however, on January 8, 2019, Plaintiff's counsel filed a "Request for Leave to Excuse the Late Filing of Doc. No. 49," in which counsel explains the reasons for Plaintiff's belated filing of a brief opposing Defendants' objections. (Doc. No. 51.) Defendants' counsel then filed a notice of concurrence to Plaintiff's request that this Court consider Plaintiff's untimely brief. (Doc. No. 52.) Noting Defendants' concurrence in Plaintiff's request, and finding that Plaintiff has articulated good cause to excuse the late filing of his brief opposing Defendants' objections, the Court will consider Plaintiff's brief in connection with its review of the Report and Recommendation.

[3] The Court finds that Magistrate Judge Carlson correctly determined that Plaintiff's amended complaint fails to adequately plead a failure to train claim against Defendants Moody and City of Harrisburg (counts 4 and 5); accordingly, the Court will adopt that recommendation and grant Defendants' motion to dismiss as to those claims.

satisfies the first and third elements of a retaliation cause of action," and, therefore, focuses on the second element – whether Plaintiff was "retaliated against by someone acting under color of state law in a way that was 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights.'" (Id. at 17) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006)).

> In connection with this inquiry, Magistrate Judge Carlson notes that assessing:
>
> whether a plaintiff's First Amendment rights are adversely affected by retaliatory conduct "is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between [the two parties], and the nature of the retaliatory acts." Bartley v. Taylor, 25 F. Supp. 3d 521, 532 (M.D. Pa. 2014) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)). However, courts are skeptical of finding retaliation where a public official's act is itself a form of speech, because the public official's own First Amendment speech rights are implicated. Bartley, 25 F. Supp. 3d at 532 (citing Suarez, 202 F.3d at 686-88).

(Id. at 19.)

In recommending that this Court deny Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim rather than grant Defendants' motion as to that claim (as was recommended in the previous Report and Recommendation adopted by the Court), Magistrate Judge Carlson focuses not on additional allegations contained in Plaintiff's amended complaint that might change the Court's analysis of the claim, but, rather, on the potential import of the United States Court of Appeals for the Third Circuit's recent decision in Conard v. Pennsylvania State Police, 902 F.3d 178 (3d Cir. 2018), on Plaintiff's ability to state a First Amendment retaliation claim.

In support of their objections to the pending Report and Recommendation, Defendants argue that Magistrate Judge Carlson erred in his reliance on Conard, which they maintain is not

applicable to the facts alleged here, and further maintain that the reasoning of Magistrate Judge

Carlson's previous Report and Recommendation was correct.  (Doc. No. 47 at 8-9, 17-20, 26-

29.)  The Court is persuaded by Defendants' argument that the Third Circuit's decision in

Conard does not alter the conclusion previously adopted by this Court:  that, absent some actual

or threatened imposition of governmental sanction, Plaintiff's amended complaint fails to

adequately allege an adverse action for purposes of the second element of a First Amendment

retaliation claim.

In Conard, the Third Circuit addressed two issues: "(1) whether the public-employment

framework applies to a former employee" under the circumstances of that case and "(2) whether

a plaintiff must plead adverse action 'of a particularly virulent character'" in connection with a

First Amendment retaliation claim based on a public employer's negative employment

references for a former employee.  See Conard, 902 F.3d at 181-82.  In its decision, the Third

Circuit held that (1) the public-employment framework does not apply to a First Amendment

retaliation claim by a former government employee, and (2) the former government employee

was not required to plead "retaliatory conduct 'of a particularly virulent character,' a standard

applicable to retaliation claims where the retaliatory conduct involves speech by a public

employee defendant."[4]  See id. at 182-83.  The Third Circuit elaborated on this finding, stating

that "[w]e have suggested that the virulent character test is implicated only where the public

official's speech touches on a matter of public concern," and because the case did "not involve a

_____

[4] The Third Circuit described this standard as assessing whether that alleged action
consisted of "'a threat, coercion, or intimidation, intimating that punishment, sanction, or
adverse regulatory action [would] follow.'"  See id. at 183 (quoting Mirabella v. Villard, 853
F.3d 641, 651 (3d Cir. 2017) (internal quotation omitted)).

matter of public concern," the court "decline[d] to interpose the virulent character test on this appeal."  See id. at 183.

The Third Circuit in Conard then focused on whether the district court correctly assessed the third element of a First Amendment retaliation claim –  whether there was a causal link between the constitutionally protected conduct and the retaliatory action.  See id. at 184.  Having found that the district court improperly imposed a temporal limitation on the causation element at the motion to dismiss stage, the Third Circuit reversed its dismissal of the retaliation claim. See id.  In addition, the Third Circuit disagreed with the district court's conclusion that negative employment references cannot constitute retaliatory acts for purposes of the second element of a First Amendment retaliation claim.  See id.  In doing so, the Third Circuit quoted one of its earlier decisions to the effect that "'First Amendment retaliation claims are always individually actionable, even when relatively minor' and that the deterrence threshold to chill a plaintiff from exercising her First Amendment rights by reason of the defendant's conduct for such a claim is 'very low.'"  See id. at 185 (quoting O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006)).

In the pending Report and Recommendation, Magistrate Judge Carlson views Conard as dictating that Plaintiff need not allege retaliatory conduct "of a particularly virulent character,"[5] the standard applied by him in connection with his previous Report and Recommendation (and adopted by the Court), in order to state a First Amendment retaliation claim.  This conclusion is

_____

[5] Again, in the situation where the alleged act of retaliation is a public employee's own speech, a court assesses whether the alleged retaliatory speech consists of "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow." See Mirabella, 853 F.3d at 651 (internal citation omitted).

7

based on his characterization of Defendant O'Conner's alleged statements that Plaintiff was a

"fake Marine" who was "stealing valor" as speech falling into the realm of "private information"

about Plaintiff, to which the "virulent character" standard should not apply under Conard.  (Doc.

No. 41 at 20.)

Initially, the Court notes that Conard concerned speech consisting of negative

employment references, and, therefore, does not necessarily provide any guidance as to whether

Defendant O'Conner's speech here – accusing Plaintiff of "stealing valor" and being a "fake

Marine" – involves private information or a matter of public concern.  However, as Defendants

note in their briefing in support of their objections to the Report and Recommendation, Plaintiff

in his amended complaint alleges that Defendant O'Conner's speech pertained to a public matter,

asserting:

> Within the past decade or more, the term "stolen valor" has become popularized
> in the media and the subject of important legislation and litigation . . . .The
> "Stolen Valor Act of 2005" (18 U.S.C. Section 704), the case of United States v.
> Alvarez, 567 U.S. 709 (2012), and the revised "Stolen Valor Act of 2013" are all
> publicly known pieces of legislation and litigation regarding the issues of "stolen
> valor" and the surrounding First Amendment issue . . . . The term "Stolen Valor"
> has become synonymous with fraudulently representing service in the United
> States military or fraudulently holding oneself out to the recipient of a decoration
> or medal for military service.

(Doc. No. 26 ¶¶ 9-11.)

The Court does not view the Third Circuit's opinion in Conard as altering the pleading

requirements necessary for Plaintiff here to adequately allege the second element of a First

Amendment retaliation claim – namely, that a public official's retaliatory speech involve "a

threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory

action [would] follow."  See Mirabella, 853 F.3d at 651.  In Magistrate Judge Carlson's Report

and Recommendation regarding Plaintiff's initial complaint, he relied on this standard in recommending that this Court find that Defendant O'Conner's verbal harassment and threat to initiate an investigation for stolen valor, without more, did not constitute sufficiently adverse action to satisfy the second element of a First Amendment retaliation claim. (Doc. No. 21 at 17-18.) He concluded that "[b]ecause Defendant O'Conner's speech did not involve threats, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action would imminently follow, the conduct that [Plaintiff] complains of simply is not enough to satisfy the second element of a retaliation claim." (Id. at 18.)

Based on the allegations of Plaintiff's amended complaint and relevant authority, the Court concludes that Plaintiff's First Amendment retaliation claim involves the speech of a public official pertaining to a matter of public concern, as opposed to "private information," as it was characterized by Magistrate Judge Carlson in the pending Report and Recommendation. In so concluding, the Court is mindful of the standard articulated by the United States Supreme Court for determining when speech constitutes a matter of public concern for First Amendment purposes:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest, that is, a subject of general interest and of value and concern to the public.

Snyder v. Phelps, 562 U.S. 443, 453 (2011) (internal quotations omitted). As Defendants note, the allegations in Plaintiff's amended complaint appear to acknowledge that speech pertaining to "stolen valor" relates to a "matter of political, social, or other concern to the community," and/or "a subject of legitimate news interest." (Doc. No. 26 ¶ 9) ("Within the past decade or more, the term "stolen valor" has become popularized in the media and the subject of important legislation

and litigation.").

Therefore, even under Conard, if the alleged speech involves a matter of public concern, the amended complaint must necessarily allege some action by Defendant O'Conner involving, at a minimum, the threatened imposition of regulatory action or sanction in order to adequately plead the second element of a First Amendment retaliation claim. Such an allegation of speech by Defendant O'Conner involving the potential imposition of governmental sanction is simply not present in Plaintiff's amended complaint. Plaintiff does not allege that Defendant O'Conner made threats of arrest, detention or citation, or that Plaintiff was in fact arrested, detained, or cited. Accordingly, the Court finds that the amended complaint's allegations regarding Defendant O'Conner's verbal harassment of Plaintiff, while disturbing, are simply insufficient to plead a Section 1983 First Amendment retaliation claim. Therefore, the Court will decline to adopt Magistrate Judge Carlson's recommendation as to Plaintiff's First Amendment retaliation claim and will grant Defendants' motion to dismiss as to that claim (count 1).

Based on his recommendation that this Court find that Plaintiff's amended complaint adequately alleges a First Amendment retaliation claim, Magistrate Judge Carlson also recommends that the Court find that Plaintiff's amended complaint states a claim for defamation of character under Section 1983. (Doc. No. 41 at 21.) Defendants correctly note that as a Section 1983 defamation of character claim requires "a change or extinguishment of a right or status guaranteed by state law or the Constitution," see Kohler v. Pennsylvania, 438 F. App'x 120, 123 (3d Cir. 2011), if Plaintiff's amended complaint fails to allege a constitutional violation by way of a First Amendment retaliation claim, as the Court herein finds that it does, then it also fails to allege a defamation of character claim under Section 1983. Accordingly, the Court will

also decline to adopt Magistrate Judge Carlson's recommendation as to Plaintiff's Section 1983

defamation of character claim and will grant Defendants' motion to dismiss as to that claim

(count 2).[6]  Accordingly, because the only claims remaining are Plaintiff's state law claims, the

Court turns to a brief discussion of those claims.

### B.        Plaintiff's State Law Claims

The remaining counts asserted in Plaintiff's amended complaint allege state law claims

for intentional infliction of emotional distress and assault (counts 3, 6 and 7).  (Doc. No. 26 at

16-17.)  Where a district court has dismissed all claims over which it has original jurisdiction, as

is the case here, the Court may decline to exercise supplemental jurisdiction over the pendent

state law claims.  See 28 U.S.C. § 1367(c)(3).  The decision as to whether the Court may

exercise supplemental jurisdiction is one that should be based on "the values of judicial

economy, convenience, fairness, and comity."  See Carnegie-Mellon Univ. v. Cohill, 484 U.S.

343, 350 (1988).  Ordinarily, when all federal law claims have been dismissed and only state-law

claims remain, the balance of these factors indicates that these remaining claims properly belong

in state court.  See id.  In the absence of a viable federal claim, the Court finds that the balance of

factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state

law claims."  See id.  Therefore, the Court will dismiss the amended complaint's state law claims

without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[7],[8]

---

[6] In light of the Court's conclusion that Plaintiff's amended complaint fails to adequately allege any constitutional claims, the Court need not address Defendants' argument that Defendant O'Conner is entitled to qualified immunity as to those claims.

[7] The Court notes that when a district court declines to exercise supplemental jurisdiction over state law claims, the statute of limitations is tolled while the federal suit is pending and for a period of 30 days after the suit is dismissed.  See 28 U.S.C. § 1367(d) ("The period of limitations

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court will adopt in part the pending Report and

Recommendation (pertaining to the amended complaint's failure to adequately plead a failure to

train claim (counts 4 and 5)) and grant Defendants' motion to dismiss counts 1, 2, 4 and 5 of

Plaintiff's amended complaint with prejudice.  The Court will dismiss Plaintiff's pendent state

law claims (counts 3, 6 and 7) without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  An

appropriate Order follows.

---

for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for
a period of 30 days after it is dismissed unless State law provides for a longer tolling period.");
see also Hedges v. Musco, 204 F.3d 109, 123-24 (3d Cir. 2000).

[8] Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state
law claims, it will not address that portion of Magistrate Judge Carlson's Report and
Recommendation wherein he recommends dismissal of those claims asserted against Defendant
O'Conner (counts 3 and 7) as barred by the doctrine of sovereign immunity, except to note that
the Report and Recommendation appears to assess those tort claims as if they were pled against
an employee of the Commonwealth of Pennsylvania, to which the doctrine of sovereign
immunity potentially applies, as opposed to an employee of a local agency, whose potential
immunity is governed by Pennsylvania's Political Subdivision Tort Claims Act ("PPSTCA"), 42
Pa.C.S. § 8541 et seq. (Doc. No. 41 at 13-16.)  The PPSTCA provides for immunity for actions
taken by a municipal employee within the scope of that employee's employment, unless conduct
involves "actual malice" or "willful misconduct."  See Sanford v. Stiles, 456 F.3d 298, 315 (3d
Cir. 2006) (discussing the PPSTCA and finding no allegations of actual malice or willful
misconduct sufficient to abrogate municipal employee's immunity under the PPSTCA).